**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CG, et al.,** | : | |
| **Plaintiffs** | : | **Civil Action No. 1:06-CV-1523** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **THE COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF EDUCATION and GERALD ZAHORCHAK,** | : | |
| **Defendants** | : | |

**MEMORANDUM**

Plaintiffs, parents of students in Lancaster and Reading School Districts, bring this action of behalf of their minor children to challenge the method for delivering special education funds in Pennsylvania. They contend that 24 P.S. § 25-2509.5, the funding statute at issue, violates federal laws, specifically: the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq.; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1; the Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1701 et seq.; and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. Defendants are the Pennsylvania Department of Education ("PDE"), the executive department of state government that oversees basic education and special education, and Gerald Zahorchak, the Secretary of the PDE. Now before the Court is Defendants' motion to dismiss Plaintiffs' amended complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. No. 11.) For the reasons that follow, the Court will deny Defendants' motion.

## I. BACKGROUND

The Individuals with Disabilities Education Act ("IDEA") conditions a state's receipt of

federal funds on the implementation of statewide special-education programs guaranteeing free appropriate public education ("FAPE") to eligible disabled children. 20 U.S.C. § 1412(a)(1)(A). Consistent with the IDEA, Pennsylvania provides funding to local school districts on an annual basis appropriated specifically for special education. It is 24 P.S. § 25-2509.5 that provides primary special-education funding to school districts. Plaintiffs allege that the statute implements a "funding formula" that requires the PDE to allocate special-education funds to a school district based on the district's overall average daily membership, or "ADM," rather than on the district's special-education needs or its ability to provide FAPE.

In addition to the formula, Plaintiffs allege that three other features of § 25-2509.5 limit the school districts' ability to provide FAPE. The first, a "hold harmless" provision, which first came into effect during the 1999-2000 school year,[1] guarantees that a school district does not receive less special-education funding than the year before. (Am. Compl. ¶ 15.) The effect of the provision, according to Plaintiffs, has been to lock in the inequities of the formula, creating "an inverse correlation between the number of special education students in a school district and the amount of state aid per student received by a school district." (Am. Compl. ¶¶ 16-17.) Moreover, Plaintiffs contend that the provision accounts for nearly 70% of total special-education funding. (Am. Compl. ¶ 16.) The second feature of concern to Plaintiffs is that the statute indirectly encourages school districts to place disabled children in highly segregated "approved private schools" by funding tuition subsidies through a separate funding statute. (Am.

[1] While the provision, 24 P.S. § 25-2509.5(aa), cited by Plaintiffs in the amended complaint refers to the 1999-2000 school year, the amended complaint refers to the 2000-2001 school year. (Am. Compl. ¶ 15.) This appears to be a typographical error and, in any event, does not affect the resolution of the motion to dismiss.

Compl. ¶¶ 21-22.) In other words, because school districts can separately account for private-school tuition subsidies, school districts have economic incentives to place children in restrictive private schools instead of using designated special-education funds. Finally, Plaintiffs allege that because many of the special-education students in the Lancaster and Reading School Districts are also in need of specialized bilingual education, the formula's failure to account for the students' unique needs has deprived them of FAPE.

In this action, Plaintiffs seek an injunction requiring the Pennsylvania Secretary of Education to abandon the current funding formula and to distribute special-education funds based upon the actual number of disabled students and the actual cost of their special-education needs. Plaintiffs also seek an appropriation of funds to the Reading and Lancaster School Districts in order to provide certain services in those districts. Defendants moved to dismiss the amended complaint on the grounds that Plaintiffs lack standing, failed to exhaust administrative remedies, and fail to state a claim upon which relief can be granted. (Doc. No. 11.) The parties subsequently briefed the motion and it is ripe for disposition. (Doc. Nos. 19, 22, 23, 28, 29.)

## II.  STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is properly granted when, accepting all factual allegations and inferences as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990). Although the moving party bears the burden of showing that no claim has been stated, Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2007), the complaint must allege facts sufficient to "raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)," Bell Atlantic Corp. v.

Twombly, 127 S. Ct. 1955, 1964 (2007) (internal citations omitted). In addition, although for the purposes of a motion to dismiss pursuant to Rule 12(b)(6) the Court must accept as true all factual allegations in the complaint, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986).

**III. STANDING**

The Court will first address Defendants' argument that Plaintiffs lack standing to pursue their claims in this case. Standing, which serves to maintain the "critical balance of power between co-equal branches of government, and ensures that appointed judges do not usurp the rightful authority of duly elected representatives of the people," Common Cause of Pa. v. Pennsylvania, 447 F. Supp. 2d 415, 424 (M.D. Pa. 2006), requires the Court to consider "both [the] constitutional limitations on federal jurisdiction and prudential limitations on its exercise," Warth v. Seldin, 422 U.S. 490, 498 (1975).

To satisfy Article III's constitutional standing requirements, a plaintiff must show that a cognizable "case" or "controversy" exists. DaimlerChrysler Corp. v. Cuno, 126 S. Ct. 1854, 1860-61 (2006). The Supreme Court has interpreted the "irreducible constitutional minimum of standing" to require:

> (1) that the plaintiff have suffered an "injury in fact"—an invasion of a judicially cognizable interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) that there be a causal connection between the injury and the conduct complained of—the injury must be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

Bennett v. Spear, 520 U.S. 154, 167 (1997) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555,

560-61 (1992)). The three elements of constitutional standing—injury in fact, causation, and likelihood of redressability—are "an indispensable part of the plaintiff's case, [and] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation." Lujan, 504 U.S. at 561.[2] Accordingly, the Court will consider whether Plaintiffs have met each of the three constitutional standing requirements.

**A. Injury in fact**

Under the first Article III standing requirement, a plaintiff must identify a legally cognizable injury. Subsumed within this requirement, the alleged injury must be both "actual or imminent, not conjectural or hypothetical" and "concrete and particularized."[3] Friends of the Earth, Inc. v. Laidlaw Environmental Servs. (TOC), Inc., 528 U.S. 167, 169 (2000); Danvers Motor Co., Inc. v. Ford Motor Co., 432 F.3d 286, 294 (3d Cir. 2005) ("Injury-in-fact is not Mount Everest."). In this case, Plaintiffs allege the denial of FAPE as a direct result of Pennsylvania's funding inequities. First, they allege that Defendants' implementation of the

---

[2] Even where the three constitutional standing requirements are met, *prudential* standing tempers the court's jurisdiction and "embraces several judicially self-imposed limits on the exercise of federal jurisdiction, such as the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Allen v. Wright, 468 U.S. 737, 751 (1984). Despite the seeming closeness of the constitutional and prudential standing principles, "neither the counsels of prudence nor the policies implicit in the 'case or controversy' requirement should be mistaken for the rigorous Art[icle] III requirements themselves." Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc., 454 U.S. 464, 475 (1982). In the present case, however, no such prudential considerations appear to weigh against the exercise of federal jurisdiction.

[3] In Warth, the Supreme Court offered yet another formulation: "distinct and palpable." 422 U.S. at 501.

statutory formula "has caused a chronic lack of funds in Plaintiffs' districts and consequent systemic deficiencies in their special education and regular education programs" (Pls' Br. in Opp'n 7), which deprived Plaintiffs' children of the right to receive FAPE as guaranteed by the IDEA. Specifically, Plaintiffs assert that FAPE has been denied because the school districts cannot afford to provide essential special-education staff and programs, including tutoring, extended-school-year programs, and bilingual-education staff. Second, Plaintiffs allege that the funding formula has created incentives for school districts to identify fewer students as eligible for special education. (Am. Compl. ¶ 18.) Finally, Plaintiffs allege that the formula encourages school districts to divert special-education students away from traditional classroom settings and into subsidized approved private schools in violation of the IDEA.[4] (Am. Compl. ¶¶ 21-22.) As alleged, these injuries are not conjectural; if proven, they constitute deprivations of rights guaranteed by law.

In addition, Plaintiffs' alleged injuries are concrete and particularized. First, with respect to the systemic deprivation of FAPE, Plaintiffs have alleged, for example, that: LP and SLB, 6th graders with Down Syndrome, have been denied extended-school-year programs (Am. Compl. ¶¶ 43-44); BB, who has behavioral problems and limited English skills, was not assigned a classroom assistant, and was later moved to an emotional-support class without Spanish-

[4] Defendants sole argument addressing the injury-in-fact requirement is that Plaintiffs have "failed to pursue administrative options available to determine whether or not they are receiving the education to which they are entitled." (Defs' Br. in Supp. 17.) Defendants' argument misses the mark with respect to standing analysis. Plaintiffs allege that their children have been denied services to which they were entitled. Whether the Court may ultimately grant relief for such injuries is analytically distinct from whether an injury in fact exists. Moreover, as discussed in more detail below, Plaintiffs' failure to exhaust administrative remedies is excused.

speaking teachers or assistants[5] (Am. Compl. ¶¶ 52-53); DER, a 13-year-old child with muscular dystrophy, received substantially less therapy than specified in her Individualized Education Program because her School District could not afford therapists (Am. Compl. ¶ 57). As for the school district's child-find obligations, Plaintiffs allege that EE experienced emotional and learning problems during school for "an extended period of time" before the school district "acknowledged that he needed special education help." (Am. Compl. ¶ 54.) Plaintiffs' injuries, as alleged, are actual, concrete, and particularized. Accordingly, the Court finds that Plaintiffs' allegations are sufficient to satisfy the first standing requirement.

**B.     Causal connection**

To satisfy the second Article III standing requirement, a plaintiff must show that the cause of the complained-of injury is sufficiently linked to the defendant's actions. Warth, 422 U.S. at 504; Pitt News v. Fisher, 215 F.3d 354, 360-61 (3d Cir. 2000). To meet this requirement, the alleged injury must be "fairly traceable to the [defendants'] asserted unlawful conduct." Allen v. Wright, 468 U.S. 737, 753 (1984).

Defendants argue that Plaintiffs' injuries are not "fairly traceable" to the funding formula, because "regardless of how Defendants disburse the [special-education] funds, the [School] Districts will spend the money as they deem appropriate." (Defs' Br. in Supp. 17.) In Bennett v. Spear, the Supreme Court rejected a similar argument,[6] and held that "[w]hile . . . it

---

[5] The amended complaint also alleges that BB's school district "proposed to [BB's] mother that BB be moved to an approved private school, which she rejected. As an alternative, they requested that she herself attend class with BB every day." (Am. Compl. ¶ 53.)

[6] In Bennett, the plaintiffs brought an action under the Endangered Species Act challenging a biological opinion issued by the Fish and Wildlife Service at the request of the Bureau of Reclamation. The Government argued that the plaintiffs lacked standing to challenge

does not suffice if the injury complained of is the result of the independent action of some third party, that does not exclude injury produced by determinative or coercive effect upon the action of someone else." 520 U.S. at 169 (emphasis in original; internal quotations, citations, and brackets omitted).

Here, Plaintiffs do not suggest that all special-education students are denied FAPE solely because of the state's funding formula. Rather, they argue that the funding formula has a "powerfully coercive effect," id., on the school districts' deprivation of FAPE, cf. Massachusetts v. EPA, 127 S. Ct. 1438, 1458 (2007) ("While it may be true that regulating motor-vehicle emissions will not by itself reverse global warming, it by no means follows that we lack jurisdiction to decide whether EPA has a duty to take steps to slow or reduce it.") (emphasis in original). Though other factors may affect a school's ability to provide FAPE, Plaintiffs have alleged sufficient facts from which it "reasonably could be inferred" that there is a "substantial probability" that Plaintiffs would receive FAPE with a more equitable distribution of funding. Warth, 422 U.S. at 504. Furthermore, Plaintiffs dispute Defendants' assertion that school districts have wide discretion to use the funds designated for special education, noting that the funding provision explicitly provides that the money disbursed "applies to Commonwealth

---

the biological opinion because it was merely advisory to the Bureau, and therefore the Bureau "retain[ed] ultimate responsibility for determining whether and how a proposed action shall go forward." 520 U.S. at 168. The Government posited that any injury suffered by petitioners could not be "fairly traceable" to the biological opinion and would not be redressable by court order. Id. The Supreme Court rejected the Government's position as "wrongly equat[ing] injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain in causation." Id.

In the present case, while it is true that school districts are ultimately responsible for managing their budgets, Plaintiffs plainly allege that the funding disbursed by Defendants plays a major role in whether FAPE is provided. Thus, Plaintiffs' injuries are "fairly traceable" to, though perhaps not ultimately caused by, Defendants' actions.

payments to school districts for the support of programs and services for exceptional children." 24 P.S. § 25-2509.5(a) (emphasis added); compare Allen, 468 U.S. at 759 (no causal connection where relatively lax guidelines for determining whether private schools receiving federal tax exemptions discriminated on the basis of race limited the efficacy of public school desegregation). Accordingly, the Court finds that the second standing requirement is satisfied.

**C. Likelihood of Redressability**

To satisfy the third standing requirement, a plaintiff must show that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Pitt News, 215 F.3d at 361 (quoting Friends of the Earth, 528 U.S. at 181). Often, the causation and redressability requirements of Article III standing go hand-in-hand. However, in Allen, the Supreme Court indicated that "the former [inquiry] examines the causal connection between the assertedly unlawful conduct and the alleged injury, whereas the latter examines the causal connection between the injury and the judicial relief requested." 468 U.S. at 753 n.19. In other words, while the second requirement focuses on the relationship between defendants' actions and plaintiffs' injuries, the third requirement focuses on a court's ability to remedy plaintiffs' injuries, irrespective of defendants' actions.

In this case, Defendants argue that the redressability is merely speculative because "more money from Defendants does not necessarily equate with different or better special education services for the individual Plaintiffs." (Defs' Br. in Supp. 17.) However, Plaintiffs' amended complaint plainly suggests that the school districts have not provided essential special-education services due to funding shortfalls created by the inequities in the funding formula. Plaintiffs seek relief in the form of an injunction that would redistribute state funds in order to adequately

provide resources for the Lancaster and Reading School District so that they could offer needed services. At least on the face of the complaint, Plaintiffs have shown that their injuries are redressable. Finally, Plaintiffs' position that sufficient funding will improve access to needed resources is not merely speculative; in fact, Congress found that before the implementation of special-education legislation guaranteeing FAPE, the "educational needs of millions of children with disabilities were not being fully met because [a] lack of adequate resources within the public school system forced families to find services outside the public school system." 20 U.S.C. § 1400(2)(D). In other words, based on Congressional findings, it is entirely plausible that the availability of financial resources is directly related to the ability of a school to provide FAPE. As such, the Court finds that Plaintiffs' injuries are redressable, and that Plaintiffs have met all three constitutional standing requirements.

## IV. DISCUSSION

Having established that Plaintiffs have standing in this matter, the Court turns to Defendants' remaining arguments. First, Defendants argue that Plaintiffs' complaint should be dismissed for failure to exhaust administrative remedies under the IDEA. Second, Defendants argue that Plaintiffs' substantive due process, Rehabilitation Act, and Equal Educational Opportunities Act claims should be dismissed for failure to state a claim upon which relief can be granted.[7] The Court will address each argument in turn.

### A. Exhaustion

[7] Defendants initially argued that state sovereign immunity barred Plaintiffs' ADA claims. Following the Third Circuit's decision in Bowers v. National Collegiate Athletic Association, 475 F.3d 524 (3d Cir. 2007), which held that Congress validly abrogated state sovereign immunity under Title II of the ADA with respect to public education, Defendants withdrew their argument. (Doc. No. 29.)

Generally, a plaintiff seeking relief under the IDEA must exhaust administrative remedies before filing in federal court.[8] As an initial matter, Defendants incorrectly argue that exhaustion is a prerequisite for a district court to maintain jurisdiction over an IDEA claim. This argument is erroneous because exhaustion is subject to waiver. Indeed, the Supreme Court has explicitly stated that "[i]t is true that judicial review is normally not available under [the IDEA] until all administrative proceedings are completed, but . . . parents may bypass the administrative process where exhaustion would be futile or inadequate." Honig v. Doe, 484 U.S. 305, 326-27 (1988).

In this case, Defendants assert that Plaintiffs failed to exhaust the administrative remedies available to them. Defendants argue that the administrative process exists to "establish which special education services Plaintiffs are entitled to, determine whether or not the Districts are providing those services, and provide Plaintiffs with an adequate remedy at law" (Defs' Br. in Supp. 11-12), and that "Plaintiffs are attempting to achieve broad-based funding formula changes—alleging that such changes are required because Plaintiffs are not receiving a

---

[8] The IDEA's exhaustion requirement is embodied in 20 U.S.C. § 1415(l), which provides that:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et seq.], title V of the Rehabilitation Act of 1973 [29 U.S.C. § 790 et seq.], or other Federal laws protecting the rights of children with disabilities, *except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter*.

20 U.S.C. § 1415(l) (emphasis added).

FAPE—without proving the fundamental question of whether or not the children are, in fact, receiving a FAPE." (Id. at 15.)

Plaintiffs concede that they failed to present their individual claims for administrative determination. However, they argue that such exhaustion would have been futile and inadequate because a due-process hearing could not provide the form of system-wide injunctive relief that is "beyond the ability of an administrative hearing officer to grant." (Pls' Br. in Opp'n 6.) When a party invokes futility to excuse exhaustion, that party bears the burden of showing that exhaustion was, as a legal or practical matter, futile. M.M. v. Tredyffrin/Easttown Sch. Dist., No. 06-1966, 2006 U.S. Dist. LEXIS 62918, at *18 (E.D. Pa. Sept. 5, 2006).

Citing Doe v. Arizona Department of Education, 111 F.3d 678, 680-85 (9th Cir. 1997), for the proposition that Plaintiffs must exhaust administrative remedies irrespective of the scope or nature of the relief sought, Defendants argue that Plaintiffs have failed to meet their burden. In Doe, a class of approximately twenty-two disabled juveniles awaiting trial in an Arizona jail brought claims under the IDEA, the Rehabilitation Act, and § 1983, against the state Department of Education alleging that they were deprived of FAPE while they were in jail. Id. at 680. The Department moved to dismiss plaintiffs' claims for failure to exhaust administrative remedies. The plaintiffs conceded that they had not exhausted remedies, but argued that exhaustion was futile "[b]ecause a system for serving children with disabilities didn't exist at the Jail" and because "the class [sought] a comprehensive remedy that the administrative process [was] not equipped to provide." Id. The court rejected the plaintiffs' argument, concluding that "Doe's claim involves the neglect of children at a single facility, which normally houses adults but which turns out also temporarily to be housing juveniles awaiting trial as adults, and which the

Department didn't know about." Id. at 682.  Significantly, the court's discussion noted that exhaustion would not be futile because "Arizona's education statutes cover county jails," id. at 683, and because "the Department did not know about the class," id. at 684.

Defendants draw an analogy between the class in Doe and Plaintiffs in the instant case. Defendants suggest that, as in Doe, exhaustion would shed light on the needs of the individual children and further the interests of the parties.  The Court is unpersuaded.  To the extent that Doe is relevant to this case, it actually undercuts Defendants' argument.  Indeed, in its discussion of Doe's claims, the Ninth Circuit stated that where a plaintiff's claim "implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act," id. at 682 (emphasis added), the case would involve a "systemic" claim in which exhaustion would be excused.  That is the case here.

Plaintiffs seek a fundamental restructuring in the state-wide funding of special education. Defendants' argument that "the administrative process will shed light on what needs to be done and will give the school districts the opportunity to provide the services the children require" (Defs' Br. in Supp. 16), elevates form over substance, and ignores the practical reality that exhaustion could not provide Plaintiffs with the form of relief they desire.  Significantly, Plaintiffs do not seek individualized relief for their children (though from the face of the complaint, it is evident that some have already done so); rather, they are pursuing injunctive and declaratory relief to remedy a perceived systemic deficiency in the state's funding formula that has indirectly deprived their children of FAPE.

Although exhaustion is ordinarily required of individuals seeking FAPE, such exhaustion

would be futile in the case sub judice. Accordingly, Defendants' motion to dismiss will be denied with respect to Plaintiffs' failure to exhaust.

### B. Plaintiffs' Substantive Due Process, Rehabilitation Act, and Equal Educational Opportunities Act Claims

Having found that Plaintiffs' failure to exhaust does not bar their claims, the Court turns to Defendants' arguments with respect to Plaintiffs' substantive due process, Rehabilitation Act, and Equal Educational Opportunities Act claims.

#### 1. Substantive Due Process

In Count II of the amended complaint, Plaintiffs allege that the funding formula violates the Fourteenth Amendment's guarantee of substantive due process. Plaintiffs allege that the funding formula is irrational and arbitrary because it allocates funds without any reference to the specific needs of a school district.[9] Defendants argue that Plaintiffs' substantive due process claim fails to state a claim.

The parties agree that at a minimum, the Court must evaluate the funding formula under

---

[9] Specifically, Plaintiffs assert that:

> The special education funding formula is irrational and arbitrary and violates the due process guarantees of the Fourteenth Amendment of the United States Constitution in that it punishes children in school districts where many disabled children are located by a) providing fewer dollars of special education supplement for their education than provided to districts where fewer disabled children reside; b) providing funds for special education which are unrelated to the actual cost of providing special education services to children needing them in the district; c) by effectively ignoring the level of local funding which is available to a school district to make up for the funding shortfall in the state subsidy; and d) discouraging districts from fulfilling their child-find responsibilities under the IDEA.

(Am. Compl. ¶ 78.)

the "rational basis" standard of review. (See Pls' Br. 14-24; Defs' Reply Br. 7-8.) Under rational-basis review, when measuring a legislative act's constitutionality, the burden is on the government to identify "a legitimate state interest that the legislature could rationally conclude was served by the statute." Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 139 (3d Cir. 2000) (quoting Alexander v. Whitman, 114 F.3d 1392, 1403 (3d Cir. 1997)). Plaintiffs allege that no such interest exists. Despite the low burden to proffer a "legitimate state interest," Defendants fail to offer any interest, legitimate or otherwise, for the funding formula in question. Rather, Defendants baldly assert: "Clearly, the Commonwealth has a legitimate interest in funding the provision of special education services under the IDEA." (Defs' Reply Br. 8.) Defendants make no attempt to identify any rationale for the funding formula, and the Court will not speculate as to one.[10] Accordingly, Defendants' motion will be denied with respect to Plaintiffs' substantive due process claims.

**C. Rehabilitation Act**

In Count III of the amended complaint, Plaintiffs allege that the funding formula violates Section 504 of the Rehabilitation Act, 29 U.S.C. § 794. Section 504 provides that no "qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." Thus, entities receiving federal funds are prohibited from denying an individual benefits solely on the basis of disability. Ridgewood Bd. of Educ. v. N.E., 172 F.3d 238, 253 (3d Cir. 1999). In this case,

---

[10] See also Doe v. Pa. Bd. of Prob. & Parole, — F.3d —, 2008 U.S. App. LEXIS 1265, at *41-42 n.9 (3d Cir. Jan. 23, 2008) ("A necessary corollary to and implication of rationality as a test is that there will be situations where proffered reasons are not rational.").

Plaintiffs allege that Pennsylvania's funding formula effectively excludes certain disabled children from receiving meaningful access to educational benefits.

Defendants argue that Plaintiffs' claims should be dismissed because "the very legislation that [Plaintiffs] challenge . . . seeks to guarantee meaningful access to students requiring special education services." (Defs' Reply Br. 9.) Defendants then argue that "the relevant question is whether the Plaintiffs can achieve meaningful access, not whether the access that Plaintiffs have is less meaningful than that enjoyed by others."[11] (Id.) In other words, Defendants argue that even if the funding formula leads creates inequality in access, the mere existence of the funding formula provides some meaningful access to educational benefits for disabled children.

Plaintiffs specifically allege, however, that the funding formula leaves disabled children in poor districts without the resources necessary to facilitate meaningful access to education. While it is undoubtedly true that Defendants provide special-education funding, the question at the present stage in this litigation is whether Plaintiffs' have alleged that the allocation of the funding shuts out qualified disabled children from gaining meaningful access to public education. The Court finds that they have, and therefore, Defendants' motion to dismiss will be denied with respect to Plaintiffs' Rehabilitation Act claims.

**D. Equal Education Opportunities Act**

In Count IV of their amended complaint, Plaintiffs allege that Defendants violated

---

[11] Defendants also argue that Plaintiffs' Rehabilitation Act claims are barred because Plaintiffs did not exhaust the appropriate administrative remedies available under the IDEA. 20 U.S.C. § 1415(l). However, as discussed above, exhaustion would be futile in this case and therefore Plaintiffs' Rehabilitation Act claims are not barred.

§ 204(f) of the Equal Educational Opportunities Act ("EEOA"), 20 U.S.C. § 1703(f).  Section 204 of the EEOA makes it an unlawful practice for a state to "deny equal educational opportunity to an individual on account of his or her race, color, sex, or national origin by . . . (f) the failure by an educational agency to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs."  20 U.S.C. § 1703.  To show a § 204 violation, a plaintiff must allege three elements: "(1) language barriers; (2) defendant's failure to take appropriate action to overcome these barriers; and (3) a resulting impediment to students' equal participation in instructional programs."  Leslie v. Bd. of Educ., 379 F. Supp. 2d 952, 960 (N.D. Ill. 2005); see also Martin Luther King Jr. Elem. Sch. Children v. Mich. Bd. of Educ., 451 F. Supp. 1324, 1332 (E.D. Mich. 1978) (rejecting the argument that § 204 of the EEOA relates only to foreign languages and finding plaintiffs' allegation "that plaintiffs are all Black and economically disadvantaged and that the defendants have failed to take appropriate action to overcome language barriers" sufficient to withstand a motion to dismiss).  Additionally, at least one court has found that allocating insufficient resources to overcome language barriers may constitute a violation of the EEOA.  Flores v. Arizona, 172 F. Supp. 2d 1225, 1239 (D. Ariz. 2000) (holding, following a bench trial, that "[t]he State's minimum $150 appropriation per [Limited English Proficient] student, in combination with its property based financing scheme, is inadequate . . . .").

      Defendants argue that Plaintiffs have failed to state a claim under § 204(f) because: (1) "Plaintiffs have failed to allege facts sufficient to demonstrate that Defendants have denied them an equal educational opportunity on account of their race, color, sex, or national origin"; and (2) "Plaintiffs have not alleged that Defendants failed to take appropriate actions to

overcome language barriers." (Defs' Reply Br. 10.) Plaintiffs, on the other hand, argue that more than half of the special-education students enrolled in the Lancaster and Reading School Districts are Hispanic, and speak English as a second language. Critically, Plaintiffs' amended complaint alleges that Spanish-speaking special-education students have needs beyond those of Spanish-speaking regular-education students or those of English-speaking special-education students. Stated differently, the combination of speaking Spanish as a first language and having special-education needs, according to Plaintiffs, creates a language barrier that impedes the students' ability to participate in needed instructional programs. Furthermore, Plaintiffs allege that the cause of such impediments is the lack of resources caused by the "failure of Defendants to account for [additional expenses associated with Spanish-speaking special-education students] in the 16% formula." (Am. Compl. ¶ 48.)

On a motion to dismiss, it is sufficient for Plaintiffs to allege that they have been "injured by being impeded in their equal participation in educational opportunities by defendant's failure to take appropriate action to overcome language barriers." Leslie, 379 F. Supp. 2d at 961. Plaintiffs have made the requisite allegation, and accordingly Defendants' motion will be denied with respect to Plaintiffs' EEOA claims.

## V.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) will be denied. An appropriate order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CG, et al., Plaintiffs** | : | **Civil Action No. 1:06-CV-1523** |
| **v.** | : | **(Chief Judge Kane)** |
| **THE COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF EDUCATION and GERALD ZAHORCHAK, Defendants** | : | |

**ORDER**

**AND NOW**, on this 25th day of February, 2008, upon consideration of the Court and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Defendants' motion to dismiss (Doc. No. 11) is **DENIED**. **IT IS FURTHER ORDERED THAT** a telephone conference shall be held on March 6, 2008, at 10:30 a.m. to discuss further deadlines. Plaintiffs' counsel shall initiate the call. The telephone number of the Court is 717-221-3990.

S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania