# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CG, et al., : | |
|     Plaintiffs : | Civil Action No. 1:06-CV-1523 |
| : | |
| v. : | (Chief Judge Kane) |
| : | |
| THE COMMONWEALTH OF : | |
| PENNSYLVANIA DEPARTMENT OF : | |
| EDUCATION and GERALD : | |
| ZAHORCHAK, : | |
|     Defendants : | |

## MEMORANDUM

Plaintiffs, parents of students in Lancaster and Reading School Districts, bring this action on behalf of their minor children to challenge the method for distributing special-education funds in Pennsylvania. They contend that 24 P.S. § 25-2509.5, the Pennsylvania statute which apportions special-education funds, violates federal laws, specifically: the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq.; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1; the Equal Educational Opportunities Act of 1974, 20 U.S.C. § 1701 et seq.; and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. Defendants are the Pennsylvania Department of Education ("PDE"), the executive department of state government that oversees basic education and special education, and Gerald Zahorchak, the Secretary of the PDE. Now before the Court is Plaintiffs' motion for class certification made pursuant to Federal Rule of Civil Procedure 23. Fed. R. Civ. P. 23. (Doc. No. 13.) For the reasons that follow, the Court will grant in part and deny in part Plaintiffs' motion.

## I. BACKGROUND

The Individuals with Disabilities Education Act ("IDEA") conditions a state's receipt of

federal funds on the implementation of statewide special-education programs guaranteeing free appropriate public education ("FAPE") to eligible disabled children. 20 U.S.C. § 1412(a)(1)(A). Consistent with the IDEA, Pennsylvania appropriates funding to local school districts on an annual basis specifically for special education. Plaintiffs allege that this appropriations statute, 24 P.S. § 25-2509.5, violates federal law because the funding formula requires the PDE to allocate special-education funds to a school district based on the district's overall average daily membership of special-education students, or "ADM," rather than on the district's special-education needs or its ability to provide FAPE.

In addition to the formula, Plaintiffs allege that three other features of § 25-2509.5 limit the school districts' ability to provide FAPE. The first, a "hold harmless" provision guarantees that a school district does not receive less special-education funding than the year prior. (Am. Compl. ¶ 15.) The effect of the provision, according to Plaintiffs, has been to "lock in" the inequities of the formula, creating "an inverse correlation between the number of special education students in a school district and the amount of state aid per student received by a school district." (Am. Compl. ¶¶ 16-17.) Moreover, Plaintiffs contend that the provision accounts for nearly 70% of total special-education funding. (Am. Compl. ¶ 16.) The second feature of concern to Plaintiffs is that the statute indirectly encourages school districts to place disabled children in highly segregated "approved private schools" by funding tuition subsidies through a separate funding statute. (Am. Compl. ¶¶ 21-22.) In other words, because school districts can separately account for private-school tuition subsidies, school districts have economic incentives to place children in restrictive private schools in lieu of using designated special-education funds to keep them in their current classrooms. Finally, Plaintiffs allege that

the funding formula denies FAPE to the many special-education students in the Lancaster and Reading School Districts with limited English proficiency (LEP) because it fails to take into consideration the need of specialized bilingual education.

In this action, Plaintiffs seek an injunction requiring the Pennsylvania Secretary of Education to abandon the current funding formula and to distribute special-education funds based upon the actual number of disabled students and the actual cost of their special-education needs. Plaintiffs have moved the Court to certify a primary class and two sub-classes on the grounds that class certification would be the most efficient and just method of attaining the desired relief. (Doc. No. 13.) Defendants have filed a brief in opposition to such motion (Doc. No. 42), to which Plaintiffs replied (Doc. No. 44). Oral argument on the motion was held June 20, 2008. (Doc. No. 46.) The motion is ripe for disposition, and for the reasons that follow, it will be granted in part and denied in part.

## II. STANDARD OF REVIEW

The plaintiffs have the burden of demonstrating that the requirements of Rule 23 have been satisfied, but they do not need to prove the merits of their case at the class certification stage; "in determining whether a class will be certified, the substantive allegations of the complaint must be taken as true." Chiang v. Veneman, 385 F.3d 256, 262 (3d Cir. 2004). The class certification requirements are "meant to assure both that class action is necessary and efficient and that it is fair to the absentees under the particular circumstances." Baby Neal for and by Kanter v. Casey, 43 F.3d 48, 55 (3d Cir. 1994). To demonstrate that a class action is an appropriate method of litigation, the plaintiff "must establish that all four requisites of Rule 23(a) and at least one part of Rule 23(b) are met." Chiang, 385 F.3d at 264 (citing Baby Neal, 43 F.3d

at 55). Rule 23(a) states:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if:
>
> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). With regard to Rule 23(b), Plaintiffs seek class certification under 23(b)(2), which requires the Court to also find that:

> (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

Fed. R. Civ. P. 23(b).

### III. DISCUSSION

Plaintiffs move for class certification on the grounds that class certification is necessary for the Court to determine the significant failure of 24 P.S. § 25-2509.5 to address the needs of Pennsylvania's special-education students. To support this claim, Plaintiffs have identified the following classes: a "Primary Class," made up of all students, disabled and non-disabled, in Pennsylvania school districts with a high population of special-education students or LEP students and low wealth; "Subclass A," comprised of disabled students within the Primary Class; and "Subclass B," consisting of disabled, primarily Spanish-speaking students at schools which also have a high percentage of primarily Spanish-speaking students within the Primary Class.

Defendants argue that, in addition to not meeting the commonality, typicality, and adequate representation prongs of Rule 23(a), the class certification motion should be denied because the putative class is vague, unnecessary, and many members lack standing. The Court will take up the latter issue first.

### A. Standing

To begin, the Court agrees with Defendants that non-disabled students cannot be class members. As determined by the Court's order on the motion for reconsideration (Doc. No. 55) and the order denying Plaintiffs' motion to submit a second amended complaint (Doc. No. 131), G.J. and non-disabled students do not have standing to proceed in this litigation and thus cannot be represented in the class. This does not, however, defeat Plaintiffs' motion for class certification entirely; Plaintiffs' proposed Subclasses consist entirely of disabled students. Accordingly, the Court will proceed with an analysis of whether the class action should be certified as to a "First Class" of disabled students in school districts with a high percentage of disabled students and low wealth, and a "Second Class" of disabled LEP students at school districts with 10% or more LEP students and low wealth.

In addition to the standing issue raised by Plaintiff G.J.'s status as a non-disabled student, Defendants contend that class certification should not be granted because individualized evaluations of each putative class member are needed to determine whether each student has been denied FAPE and therefore has standing. The Court disagrees. Defendants conflate standing with the Rule 23 class certification requirements. See Hassine v. Jeffes, 846 F.2d 169 (3d Cir. 1988) ("[T]he standing analysis is distinct from the analysis of the adequacy of representation by a putative named plaintiff."); Miller v. Hygrade Food Prods. Corp., 89 F.

Supp. 2d 643, 652 (E.D. Pa. 2000) (highlighting the distinction between standing and Rule 23 requirements); 1 Newberg on Class Actions § 2:7 (4th ed.). While the named Plaintiffs must have standing to assert their claims before the Court, only the requirements of Rule 23 need be established as to unnamed class members. 1 Newberg on Class Actions § 2:7 (4th ed.); Baby Neal for and by Kanter v. Casey, 43 F.3d 48, 56 ("[C]lass members can assert such a single common complaint even if they have not all suffered actual injury; demonstrating that all class members are *subject* to the same harm will suffice." (emphasis in original)). Further, the named plaintiffs need not have sustained the same precise injury as all the class members, "only that the harm complained of be *common* to the class." Hassine v. Jeffes, 846 F.2d 169, 177 (3d Cir. 1988) (emphasis in original). This Court has already considered and determined that each named Plaintiff need not have exhausted administrative remedies or have proved that he or she was denied FAPE in order to have Article III standing to bring this suit. (Doc. Nos. 31, 55, & 131.) Plaintiffs need only allege that all Plaintiffs are subject to the systemic failure to provide FAPE caused by the funding formula, which they have done.

**B. Class Definition is not Vague, Amorphous, or Unnecessary**

Defendants' brief in opposition to the motion for class certification next asserts that class certification should be denied because the class requested is vague, amorphous, and unnecessary. Since Defendants' initial briefing on the issue, however, Plaintiffs have clarified the precise school districts[1] and number of students (38,336) within those districts which would be involved

---

[1] Plaintiffs have identified 56 school districts which meet the qualification of having 17% or more enrolled special-education students. Those districts are enumerated in a table on page 4 of Plaintiffs' reply brief. (Doc. No. 44 at 4.) Plaintiffs also identified at oral argument the five school districts which have 10% or more LEP students, whose disabled, LEP students would be included in the Second Class: Reading, Allentown City, Lebanon, Lancaster, and York City

6

in the classes, thus defining the classes with particularity.

Plaintiffs state that the First Class will consist of special-needs students who attend a Pennsylvania school district which has a special-education enrollment of 17% or more of its students and a limited ability to raise local funds to support education programs as determined by a market value/personal income ratio ("MV/PI") of .65 or greater for 2007. (Doc. No. 44, at 3.) These cut-off numbers demonstrate that Plaintiffs have articulated with particularity a putative class; Plaintiffs have determined a bright-line standard that a school district must meet for its special-needs students to be included within the class. Plaintiffs further specify that there are approximately 38,336 students within this class. The Court finds that this classification is not vague, amorphous, or overly broad. Contrary to Defendants' assertion, there will be no need to conduct a "mini-hearing" to determine the precise class members because the school districts are already under an obligation to identify special-needs and disabled students.

Plaintiffs explain that the Second Class will consist of special-needs LEP students within school districts that have 10% or more LEP students and .65 MP/VI or greater. Although the Plaintiffs have been unable to identify the precise number of students to whom this Second Class applies, the number is ascertainable. Determining whether a student is LEP is no more subjective than determining whether a child is disabled. Further, the Court finds that, based upon the affidavit of Bruce Baker, the MV/PI ratio, 17% special-education enrollment and 10% LEP enrollment distinctions are reasonably calculated to determine those students most negatively impacted and effectively denied FAPE by the challenged funding formula. (Doc. No. 48.)

Defendants also argue that because the statutory funding formula could be struck down if

---

School Districts. (See Doc. No. 48 at 6.)

it were deemed illegal as to only one Plaintiff, class certification is unnecessary to accomplish the relief sought. Plaintiffs respond that a broad-based analysis of the statute's impact on all disabled students within school districts with above-average disabled student populations and MV/PI ratios is necessary for the Court to determine whether it is the funding formula itself rather than other school district budgetary decisions which caused Plaintiffs' injuries. The Court agrees that an individual Plaintiff *could* attain an injunction to change the state funding formula, but the Court also agrees that a wider perspective will aid the Court in assessing the unlawful effect of the funding formula. The negative impact on special-education students allegedly caused by the funding formula at issue will be best demonstrated through it's application to the disabled student population as a whole rather than its application to individual students. The risk of mootness in a case such as this, where individual Plaintiffs might move away from the school district or graduate prior to the resolution of the claims, also suggests class certification is necessary in this instance.

Accordingly, the Court finds that the proposed classes are not overly broad, vague, amorphous, or unnecessary and will now proceed to a discussion of the Rule 23 factors to determine whether class certification is appropriate.

**C. Numerosity**

To attain class certification, Plaintiffs must first demonstrate the class meets the numerosity requirement. Fed. R. Civ. P. 23(a) (defining numerosity as "the class is so numerous that joinder of all members is impracticable."). The Third Circuit Court of Appeals has held that classes of greater than 40 members will generally be sufficient to meet the numerosity requirement. Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001) ("[G]enerally if the

named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of rule 23(a) has been met."). Here, 38,336 students would comprise the First Class. While Plaintiffs have not predicted with such specificity the number of students in the Second Class, it appears that membership would be in the hundreds. Given that joinder would certainly be impractical for such a large number of Plaintiffs, the Court finds that the numerosity requirement is met.

### D. Commonality

To establish commonality, Plaintiffs must show that "the named plaintiffs share *at least one* question of law or fact with the grievances of the prospective class." Stewart, 275 F.3d at 227 (emphasis in original, internal citations omitted). All putative class members do not need to share identical claims, however, and "factual differences among the claims of the putative class members do not defeat certification." Baby Neal, 43 F.3d at 56. The Third Circuit Court of Appeals has guided that "because the [commonality] requirement may be satisfied by a single common issue, it is easily met. . . .[I]njunctive actions, 'by their very nature often present common questions satisfying Rule 23(a)(2).'" Id. (internal citations omitted).

Here, Plaintiffs argue that the common question of law or fact is whether Pennsylvania's ADM-based special-education funding formula impedes special-needs students' education in violation of the IDEA, ADA, Rehabilitation Act, and Fourteenth Amendment. (Doc. No. 14 at 6; Doc. No. 44 at 8.) This systemic challenge, which requires a combination of legal and factual determinations, is common to all class members, particularly in light of the fact that all members are special-education students. For the Second Class, Plaintiffs add the common question of whether Pennsylvania's distribution of special-education funds violates the Equal Educational

9

Opportunities Act by failing to take into account language barriers and the additional costs involved therein. (Id.) This, too, satisfies the commonality element.

Other courts have certified class actions based on similar allegations. In Cordero by Bates v. Pennsylvania Dep't of Educ., 795 F. Supp. 1352 (M.D. Pa. 1992), another court in this district certified a class of students challenging the design of PDE's approved private school system under the IDEA and Rehabilitation Act. Cordero, 795 F. Supp. at 1354. There, as here, the class members each were in factually distinct situations in terms of their receipt of FAPE, but the challenge and the desired relief were common to all members, thus justifying class certification. Id.

Class certification was also granted for a similar class of disabled students in New York who challenged their school district's systemic failure to develop and implement policies to ensure that all students received FAPE. Andre H. by Lula H. v. Ambach, 104 F.R.D. 606, 611 (S.D.N.Y. 1985) ("[A]lthough the placement of the students requires an individual determination, this is not a bar to class certification."). As with Defendants in this action, the defendants in Andre H. argued that class certification should be barred on the basis that the plaintiffs' individualized factual situations foreclosed a finding of commonality. The Southern District of New York determined that the commonality requirement was met because the main thrust of the plaintiffs' claims was allegation of a systemic failure, not a failure of the policy as applied to each member individually. The same reasoning applies to this case. Plaintiffs in the First Class of the case *sub judice* commonly allege a systemic failure of the special-education funding formula to provide FAPE to special-needs students at low-income schools with high special-needs populations within the state. Plaintiffs in the Second Class allege that the same

systemic failure disproportionately affects them as disabled LEP students at schools with high LEP populations. These questions, shared by all members of the First Class and Second Class, respectively, are sufficient to support a finding of commonality for class certification purposes.

**E. Typicality**

Defendants argue that the typicality element is not met because there has been no showing that all putative class members have been denied FAPE, and thus no showing the named Plaintiffs' injuries are typical of all class members' injuries. Defendants then, largely reiterate their argument against commonality in the context of the typicality factor.

Although the parties discuss commonality and typicality in tandem, the two elements are distinct, each requiring independent analysis. Baby Neal, 43 F.3d at 56. Unlike the commonality requirement, "the typicality inquiry centers on whether the interests of the named plaintiffs align with the interests of the absent members." Stewart, 275 F.3d at 227. Thus, the common claims should be "comparably central to the claims of the named plaintiffs as to the claims of the absentees" and the court should ensure that the legal theories advanced by the named plaintiffs are consistent the absentee plaintiffs' interests. Baby Neal, 43 F.3d at 57; Weiss v. York Hospital, 745 F.2d 786, 810 n.36 (3d Cir. 1984). The Third Circuit has further explained that "cases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement . . . actions requesting declaratory and injunctive relief to remedy conduct directed at the class clearly fit this mold." Baby Neal, 43 F.3d at 58.

In this case, named Plaintiffs and the putative class challenge the same allegedly unlawful conduct, the ADM-based special-education funding statute, and seek injunctive relief.

11

Plaintiffs' claim is precisely that the funding formula for special-education established by 24 P.S. § 25-2509.5 systemically denies special-needs students at low-income schools the education they are due under the various statutes; to the extent only some or not all students are denied that education is a commentary on the merits of the claim, rather than on whether the claims Plaintiffs assert are typical of those experienced by the entire class. Plaintiffs do not need to show that every putative class member has been denied FAPE prior to their entry into the class, and they do not need to show that all class members are affected by the funding formula in the same way or to the same extent to meet the typicality requirement. Plaintiffs do, however, need to demonstrate that the systemic challenge is equally important to the named Plaintiffs as to the unnamed Plaintiffs.

The Court finds that the named Plaintiffs' claims are no less central to their case than to the absentee class members' case; the systemic challenge to Pennsylvania's flat percentage funding statute is the central issue to all the claims. In fact, the allegedly unlawful funding formula appears to be the *only* basis for the named Plaintiffs' claims under each of the multiple statutes. (Doc. No. 4 at 27-30.) Thus, named Plaintiffs cannot be deemed to have less interest in the resolution of the funding formula challenge than the unnamed Plaintiffs have. Accordingly, the typicality element is met.

### F. Adequate Representation

Defendants next allege that the classes should not be certified because there is inadequate representation. The adequate representation element requires that "(a) the plaintiff's attorney [] be qualified, experienced, and generally able to conduct the proposed litigation, and (b) the plaintiff [] not have interests antagonistic to those of the class." New Directions Treatment Servs.

v. City of Reading, 490 F.3d 293, 313 (3d Cir. 2007). This element seeks to "uncover conflicts of interest between the named parties and the class they seek to represent." Id. Defendants argue that Plaintiffs fail the second prong of this test because Plaintiffs' request for specific programs to benefit the class members at Lancaster and Reading School Districts is antagonistic to the interests of class members in other school districts. Due to the finite amount of funding available for special-education needs, Defendants suggest that an award of funding to either of these particular school districts would directly result in less money being available to class members in all other school districts.(Doc. No. 42 at 18-19.)

The Court disagrees. Plaintiffs first, and throughout the complaint, express their desire for injunctive relief "so that school districts in Pennsylvania receive funding based on the actual number of students in their enrollment who have been identified as eligible for special education services, and the actual cost of those services." (Doc. No. 4 at 30.) Although Plaintiffs do specifically request "injunctive relief to provide funds for the Reading School District which will enable it to hire a full-time bilingual behavior interventionist and/or on-site school psychologist, as well as bilingual assistants for the emotional support classrooms," as well as bilingual aids, a special education coordinator, and ESY programs for Lancaster School District, this does not create an antagonistic interest because Plaintiffs also request "injunctive relief which provides adequate funding to all school districts which also have a high incidence of special education students and little local taxing ability." (Doc. No. 4 at 30-31.)

It is clear that Plaintiffs' primary goal in the litigation is to revise the state funding formula so that special-education funds are dispersed with consideration for the actual cost of providing special-needs education at the respective schools. Plaintiffs' particularized requests for

new bilingual aids and improved special-needs programming at Reading and Lancaster School Districts are simply an articulation of how funding would be spent to resolve their alleged injuries at those schools. The Court cannot find that this relief is antagonistic to the goals of the lawsuit or other special needs children, particularly in light of Plaintiffs' reciprocal request for "adequate funding to all school districts," which seemingly incorporates those same bilingual aides and special education resources, to the extent they are necessary, at all other school districts within the classes. For this reason, the Court finds that Plaintiffs have met their burden of establishing that they have adequate representation to proceed as a class action, and thus all Rule 23(a) requirements are met.

### G. Rule 23(b)(2) Analysis

Rule 23(b)(2) authorizes class action treatment for cases that seek injunctive relief. Fed. R. Civ. P. 23(b)(2); Stewart, 275 F.3d at 228. The Third Circuit has explained that Rule 23(b)(2) "is almost automatically satisfied in actions primarily seeking injunctive relief . . . . What is important is that the relief sought by the named plaintiffs should benefit the entire class." Baby Neal, 43 F.3d at 58-59.

Here, Plaintiffs seek an injunction to require the Pennsylvania special-education funding-formula to consider the actual number of special-needs students and cost of providing special-education to those students in a school district rather than to assume a figure based on unfounded averages. All class members are special-needs students at schools who have more special-needs students than the average figure assumes or whose education costs more by virtue of their limited English proficiency, and are therefore receiving less special-education funding per student than other special-education students. The bedrock of Plaintiffs' claims is that a change

in the funding formula to account for factors other than the ADM would benefit all class members. The Court easily concludes that this action is within the type Rule 23(b)(2) was designed to authorize.

## V.     CONCLUSION

Based on the foregoing considerations, the Court finds that all the requirements for class certification are met. Accordingly, a class action will be certified with the First Class being all identified special-needs students attending schools with a 17% or greater enrollment of special needs students and with a MV/PI ratio of .65 or greater. A Second Class will also be certified for all disabled LEP students attending school districts which have a 10% or greater population of LEP students. To the extent Plaintiffs seek to include regular-education students within the above-described school districts as class members, that motion is denied.

An order consistent with this memorandum follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CG, et al., : | |
|     Plaintiffs : | Civil Action No. 1:06-CV-1523 |
| : | |
| v. : | (Chief Judge Kane) |
| : | |
| THE COMMONWEALTH OF : | |
| PENNSYLVANIA DEPARTMENT OF : | |
| EDUCATION and GERALD : | |
| ZAHORCHAK, : | |
|     Defendants : | |

## ORDER

**AND NOW**, on this 29th day of September 2009, upon consideration of Plaintiffs' motion to certify class action (Doc. No. 13), **IT IS HEREBY ORDERED THAT** Plaintiffs' motion is **granted in part and denied in part**. A First Class of Plaintiffs consisting of special-needs students attending Pennsylvania School Districts which have a 17% or higher enrolled population of special-needs students and a market value/personal income ("MV/PI") ratio of .65 or greater is certified, as well as a Second Class of Limited English Proficiency ("LEP") special-needs students at schools which have a 10% or greater population of LEP students.

                                                                                S/ Yvette Kane
                                                                                Yvette Kane, Chief Judge
                                                                                 United States District Court
                                                                                 Middle District of Pennsylvania