IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| C.G., et al., | : | |
|     Plaintiffs | : | Civil Action No. 1:06-cv-1523 |
| | : | |
| v. | : | (Chief Judge Kane) |
| | : | |
| THE COMMONWEALTH OF | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| EDUCATION, and SECRETARY | : | |
| GERALD ZAHORCHAK, | : | |
|     Defendants | : | |

**MEMORANDUM ORDER**

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Defendants move to strike the expert report of Dr. Sharon O'Malley pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) and Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999) (quoting Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 589 (1993)). Defendants argue that Dr. O'Malley lacks the qualifications necessary to testify as an expert in the area of special education because her expertise is entirely in the area of English as a Second Language ("ESL") education. Defendants further contend that her report fails to comply with the Federal Rules of Civil Procedure in that she does not cite the data or information she considered when arriving at her conclusions. In further support of their contentions, Defendants emphasize that Dr. Buenaventura, Defendants' expert in the field of ESL education, found Dr. O'Malley's report to be unclear and lacking in statistical data or scientific studies to support her conclusions. (Doc. No. 160 at 5-6.)

Expert witnesses are "permitted to testify regarding 'scientific, technical, or other specialized knowledge' if it will 'assist the trier of fact to understand the evidence or to

1

determine a fact in issue.'" United States v. Mornan, 413 F.3d 372, 380 (3d Cir. 2005) (quoting Fed. R. Evid. 702). Even in cases not involving scientific testimony, the Court must act as a gatekeeper and ensure that expert opinions are "based upon sufficient facts or data," are "the product of reliable principles and methods" and have "applied the principles and methods reliably to the facts of the case." Id. However, in such cases, a court need not focus on the factors identified in Daubert to assess the expert's reliability. Id. Rather, "the relevant reliability concerns may focus upon personal knowledge or experience" of the proposed expert, including practical experience and academic training. Better Box Commc'ns Ltd. v. BB. Tech., Inc., 300 F.3d 325, 329 (3d Cir. 2002) (internal citations omitted). A court must satisfy itself that the expert's conclusions "could reliably flow from the facts known to the expert and the methodology used, . . . and therefore [not] too likely to lead the factfinder to an erroneous conclusion." In re TMI Litigation, 193 F.3d 613, 665-66 (3d Cir. 1999). Further, the proffered expert witness must possess skill and knowledge greater than the average layperson so as to aid the trier of fact in arriving at his or her conclusion. Better Box, 300 F.3d at 328.

Defendants concede, and the Court agrees, that Dr. O'Malley is sufficiently qualified as an expert in education of Limited English Proficiency ("LEP") students and at managing LEP programs to render opinions regarding proper and preferred methods of educating LEP students. Dr. O'Malley has earned a doctoral degree in bilingual/ESL education; she has received certifications in English as a Second Language, Elementary Bilingual Education, Secondary Spanish, and Supervisor of Foreign Languages; she has worked at two school districts as an English Language Learners ("ELL") teacher and director of the districts' special education programs for a combined period of ten years; and she also works as an independent consultant

2

reviewing Pennsylvania ELL certification accreditations. (Doc. No. 72 at 31-33.) However, Defendants argue that Dr. O'Malley opines beyond the area of her expertise – ESL education – into the area of special education. On that point, Plaintiffs concede that Dr. O'Malley is not qualified as an expert. (Doc. No. 164 at 5-6.) Accordingly, her statements that can be construed to speak generally to the quality of special education and what can be done to enhance special education, rather than what can be done to enhance special education students' access to ESL opportunities, must be stricken. It is likewise beyond her area of expertise to discuss special education students' dropout rates, the feelings of special education teachers generally, and the special education budgetary shortfalls. (Doc. No. 72 at 19-20, 26.)

Finding that Dr. O'Malley is qualified as an expert, however, is only the first step. Before admitting testimony the Court must first determine that the opinions asserted are based on reliable methodology and that the opinions will assist the trier of fact. In re TMI Litigation, 193 F.3d at 663; see also Kumho Tire Co., 526 U.S. at 149 (applying Daubert's reliability standard to all expert testimony, not just scientific expert testimony). On this issue, Plaintiffs' are unable to satisfy their burden.

Dr. O'Malley's explanation of her methodology is meager, at best. Her report is nothing more than a series of conclusions and pronouncements with absolutely no explanation of how those conclusions were reached or whence the information supporting those conclusions came. Even the most basic information in the report is supported only by mere conjecture. For example, she declares that "[o]n average it probably takes a teacher 1-2 hours a week to modify the curriculum [for an LEP child]." (Doc. No. 72 at 12.) However, the report does not explain, among other things, what teachers – if any – were surveyed, what grade levels those teachers

taught, which subjects those teachers taught, or in which school districts those teachers taught. (Id.) The Court can only conclude that such statements are a guess, albeit an educated one, ventured by Dr. O'Malley.

Even Dr. O'Malley's most relevant and significant findings are devoid of any factual support. She claims "ELL was never a priority and there was never enough money for the proper instructional materials. SPED numbers were high due to the urban setting and the program was severely under funded. There were not enough teachers and supports in place." (Id. at 27.) How she arrives at these conclusions and precisely what these statements mean is a mystery. Emblematic of her entire report is her conclusion, which declares that "[i]f other school districts, like York City, are not providing adequate services for limited English proficient students with disabilities, they are ultimately not providing a free and appropriate education (FAPE) required by IDEA." (Id. at 29.) As with all tautologies, the Court cannot dispute that the statement "if districts are not providing an adequate education, then they are not providing an adequate education" is true. However, it begs the question: is the education provided adequate? And if not, why? On these issues, the report leaves the Court in suspense.

Further undermining the reliability of Dr. O'Malley's report is that she fails to define key terms and leaves many conclusions unclear or ambiguous. For example, she uses acronyms, such as MDE, but does not explain what MDE means. (Id. at 11.) She asserts that the York City School District's ESL programs, as well as all programs in Pennsylvania are less effective than those in Texas, but does not describe how or why. (Id. at 21.) She claims "[c]lass size was unmanageable to receive quality instruction," but she never explains how big the classes were, to which classes she refers, or how she defines unmanageable. (Id. at 27.) In sum, without

4

consideration of the correctness of the conclusions presented, the Court finds that the O'Malley report is insufficiently reliable to be considered because it does not explain the underlying basis for its opinions or clearly express the meaning of those opinions such that the fact finder could assess the report's credibility.[1]

**AND NOW**, this 8th day of November 2010, upon consideration of Defendants' motion to strike Dr. O'Malley's expert report (Doc. No. 159), **IT IS HEREBY ORDERED THAT** the motion is **GRANTED.**

    S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania

---

[1] Finally, the O'Malley report makes several statements that are conclusions of law. For example, the report states that "clearly, [expecting Down Syndrome ESL students' language needs to be met in the special education classrooms] was a violation of the law and I had to put a stop to it when confirmed." (Id. at 18, 30.) This statement must be stricken as a conclusion of what the law requires, which is a question for the fact finder and beyond the scope of permissible expert testimony. See Berckeley Inv. Group, Ltd. v. Colkitt, 455 F.3d 195, 217-19 (3d Cir. 2006) (testimony as to industry customs that embrace an ultimate issue is allowed, whereas testimony that indicates whether a legal duty was complied with and what is required under the law is prohibited); Carswell v. Borough of Homestead, 381 F.3d 235, 243-44 (3d Cir. 2004) (disregarding expert's opinion that constituted legal conclusion). Dr. O'Malley's statement that FAPE is not being provided is not only beyond her area of expertise, but also relies upon legal terminology for which she has not laid a foundation in her report. (Doc. No. 72 at 30.) Thus this statement, too, even if not stricken as beyond the scope of her expertise, would exceed the bounds of proper expert testimony because it incorporates a legal conclusion.