IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CG, et al., : | |
|     Plaintiffs : | Civil Action No. 1:06-CV-1523 |
| : | |
| v. : | (Chief Judge Kane) |
| : | |
| THE COMMONWEALTH OF : | |
| PENNSYLVANIA DEPARTMENT OF : | |
| EDUCATION and GERALD : | |
| ZAHORCHAK, : | |
|     Defendants : | |

**MEMORANDUM**

Plaintiffs, two classes represented by parents of students in Lancaster and Reading School Districts, bring this action on behalf of their minor children to challenge the Commonwealth of Pennsylvania's method for distributing special education funds. They contend that 24 P.S. § 25-2509.5, the Pennsylvania statute which apportions special education funding, violates federal law, specifically: the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.; Section 504 of the Rehabilitation Act, 29 U.S.C. § 794; the Due Process Clause of the Fourteenth Amendment, U.S. Const. amend. XIV, § 1; the Equal Educational Opportunities Act of 1974 ("EEOA"), 20 U.S.C. § 1701 et seq.; and Title II of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 et seq. Defendants are the Pennsylvania Department of Education and Gerald Zahorchak, the Secretary of the Department. Now before the Court are the parties' cross motions for summary judgment. (Doc. Nos. 109, 110.) For the reasons that follow, the Court will deny Plaintiffs' motion and grant Defendants' motion in part and deny Defendants' motion in part.

I.  BACKGROUND

The Individuals with Disabilities Education Act ("IDEA") conditions a state's receipt of federal funds for special education on the implementation of statewide special education programs guaranteeing a free appropriate public education ("FAPE") to eligible disabled children. 20 U.S.C. § 1412(a)(1)(A). Consistent with the IDEA, Pennsylvania appropriates funding to local school districts on an annual basis specifically for special education. Plaintiffs allege that this funding formula, 24 P.S. § 25-2509.5, violates federal law because it requires the Pennsylvania Department of Education to allocate special education funds to a school district based on average daily membership of special education students across the Commonwealth rather than on the actual number of special education students enrolled in the district.

A.  **Funding Formula**

The Commonwealth currently employs what is commonly known as a "census based" funding model to supplement local special education budgets. That is, funds are allocated, in part, based on the average number of special education students enrolled in all districts in Pennsylvania, rather than on a headcount of special education students actually enrolled in a particular district or per special education resource. The Pennsylvania funding formula consists of four parts: (1) the base amount and base supplement; (2) an inflation index supplement; (3) a minimum percentage funding increase, and (4) a special education contingency fund. 24 P.S. § 25-2509.5.

Of the four parts of the funding model, Plaintiffs primarily object to the first, which accounts for the vast majority of the Commonwealth's annual allocation of special education funding to local school districts. (Doc. No. 4 ¶ 16.) The base amount is equal to the total

amount of state funding the school district received in the previous year. The base supplement is calculated as follows: (1) multiply the district's market value/personal income ratio ("MVPI ratio")[1] by sixteen percent – where sixteen percent is equal to the average enrollment of special education students across the Commonwealth – of the prior school year's average daily membership of the school district; (2) multiply the resulting product by the Commonwealth's total available supplemental funding; and (3) divide that product by the sum of the products of the MVPI ratio multiplied by sixteen percent of the average daily membership of all school districts for the prior school year.[2] See generally 24 P.S. § 25-2509.5. This supplemental amount makes up only about 2.6 percent of the Commonwealth's total special education budget and is limited to approximately 2 to 4 percent of each district's budget; the vast majority of special education funding is determined by the base amount. (Doc. No. 148 ¶¶ 10-12.) However, because the base supplement allocates funding based on the average enrollment of special needs students across the Commonwealth and the base amount is derived, in large part, from each prior years' base supplements, the average enrollment of special needs students is factored in to the annual base amount.

B.      **Procedural History**

In their amended complaint, Plaintiffs seek declaratory judgment and an injunction requiring the Pennsylvania Secretary of Education to abandon the current funding formula and to

---

[1] The MVPI ratio represents the combined market value and income wealth for each pupil in a district. (Doc. No. 111 ¶ 11.) Thus, including the MVPI ratio in the formula ensures that those districts with lower tax bases receive more supplemental state funding.

[2] This formula came into use beginning with the 2003-04 school year and has been reused for each subsequent school year. See 24 P.S. § 25-2509.5 (mm) - (zz)

distribute special education funds based upon the actual number of disabled students in each district and the actual cost of their special education needs. (Doc. No. 4 at 30-31.) Plaintiffs further seek an injunction requiring the Commonwealth to provide funds for the Reading and Lancaster School Districts to hire bilingual staff to assist with Limited English Proficiency ("LEP") special education students. (Id.) The Court has certified two classes as the most efficient and just method of attaining the desired relief. (Doc. No. 133.) The First Class consists of special needs students attending Pennsylvania School Districts which have a 17 percent or higher enrolled population of special needs students and an MVPI ratio of .65 or greater. (Id.) The Second Class consists of LEP special needs students at Pennsylvania School Districts with a 17 percent or higher enrolled population of special needs students and MVPI ratio of .65 or greater and which also have a 10 percent or greater population of LEP students. Defendants previously moved to dismiss for failure to state a claim, which this Court denied. (Doc. No. 31.) The parties subsequently filed cross motions for summary judgment. (Doc. Nos. 109, 110.) Defendants seek summary judgment on all of Plaintiffs' claims. (Doc. No. 110.) Plaintiffs seek summary judgment on their Substantive Due Process and EEOA claims. (Doc. No. 109.) Plaintiffs also previously sought summary judgment on their Rehabilitation Act claim, but withdrew the motion as to that claim. (Doc. Nos. 139, 143.)

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment is warranted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is material if it might affect the outcome of the

4

suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52. In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322.

With respect to the sufficiency of the evidence that the non-moving party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

5

574, 586 (1986).

## III.    DISCUSSION

Defendants request summary judgment on each of Plaintiffs' claims. (Doc. No. 110.) Plaintiffs' request summary judgment on their claims arising from the Due Process Clause of the Fourteenth Amendment and the EEOA. (Doc. No. 109.) The Court will first consider Defendants' motion for summary judgment as to two issues that Plaintiffs failed to address in their brief in opposition: (1) Plaintiffs' Rehabilitation Act and ADA claims against Defendant Zahorchak; and (2) Plaintiffs' Substantive Due Process claim against the Department of Education. The Court will then consider the remaining issues in turn. Where the parties request relief on the same issue, the Court will consider the cross motions in tandem.

### A.    Plaintiffs' Rehabilitation Act and ADA Claims Against Defendant Zahorchak

Plaintiffs' amended complaint raises Rehabilitation Act and ADA claims against all Defendants. (Doc. No. 4 ¶¶ 79-80, 82.) However, the Rehabilitation Act and ADA do not authorize actions against individuals. A.W. v. Jersey City Public Schools, 486 F.3d 791, 804 (3d Cir. 2007) (holding individuals are not liable under Section 504 of the Rehabilitation Act); Emerson v. Thiel College, 296 F.3d 184, 189 (3d Cir. 2002) (holding individuals are not liable under Titles I and II of the ADA). Because Defendant Zahorchak is an individual, Defendants argue, and the Court agrees, that summary judgment must be granted as to him on these claims.[3]

---

[3] Although the Court agrees with Defendants on the merits, the Court observes that Plaintiffs do not dispute Defendants' motion for summary judgment. Where, as here, the party opposing a motion for summary judgment bears the ultimate burden of proof on an issue at trial, the moving party discharges its burden by "pointing out" to the court that there is an absence of evidence supporting the nonmoving party's claim. UPMC Health Sys. v. Metro. Life Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004). The non-moving party then must identify evidence of record

**B.     Section 1983 Claim Against the Department of Education**

Plaintiffs allege the special education funding formula violates the due process guarantees of the Fourteenth Amendment of the United States Constitution.[4] (Doc. No. 4 ¶ 78.) Defendants contend that Section 1983 does not abrogate Eleventh Amendment immunity and that therefore Plaintiffs' Due Process claim against Defendant Department of Education fails as a matter of law. (Doc. No. 123 at 50-51.) Plaintiffs fail to respond on this issue.[5] "A plaintiff other than the United States or a state may not sue a state in federal court without the latter state's consent unless Congress abrogates the state's Eleventh Amendment immunity pursuant to a constitutional provision granting Congress that power." Chittister v. Dep't of Community & Economic Dev., 226 F.3d 223, 226 (3d Cir. 2000). By statute, the Commonwealth of Pennsylvania has specifically withheld such consent. 42 Pa. Cons. Stat. Ann. § 8521(b). The Supreme Court has held that Section 1983 does not abrogate the states' Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332, 345 (1979). Therefore, because consent has been withheld and Section 1983 does not abrogate the states' sovereign immunity, Pennsylvania

---

that creates a genuine issue of material fact if it is to survive summary judgment. Childers v. Joseph, 842 F.2d 689, 694-95 (3d Cir. 1988). "The onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." Resolution Trust Corp. v. Dunmar Corp., 43 F.3d 587, 599 (11th Cir. 1995).

[4] Although not clearly asserted in Plaintiffs' Complaint, Defendants correctly characterize Plaintiffs' Due Process claim as a claim under 42 U.S.C. § 1983. The Fourteenth Amendment, standing alone, does not provide individuals with affirmative causes of action against the states, "'[h]ence [Section 1983] throws open the doors of the United States courts to those whose rights under the Constitution are denied or impaired.'" Mitchum v. Foster, 407 U.S. 225, 240 (1972) (quoting Cong. Globe, 42d Cong., 1st Sess., 374-76 (1871) (statement of Rep. Lowe)).

[5] See supra, note 3.

cannot be sued under Section 1983. Moreover, the Department of Education, as a department "having no existence apart from the state," is also cloaked in the Commonwealth's immunity from suit under Section 1983. Laskaris v. Thornburgh, 661 F.2d 23, 25 (3d Cir. 1981). As such, the Court agrees that a Section 1983 claim may not be brought against Defendant Department of Education.[6]

### C. Due Process Claim

Plaintiffs and Defendants bring cross motions for summary judgment on the issue of whether the Commonwealth's funding scheme violates Due Process. Although the parties differ on the outcome of the issue, both sides are in agreement on the proper standard to apply. Because educational interests are not fundamental rights, the Court must evaluate Plaintiffs' Due Process claim in accordance with the rational basis standard. San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 37-40 (1973) (holding that an education is not a fundamental right and applying rational basis review to the state's funding scheme). Under rational basis review, Plaintiff bears the burden of proving that the statute in question is not rationally related to any state interest. Heller v. Doe, 509 U.S. 312, 320 (1993) (observing that under rational basis review a statute is presumed constitutional and "the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it"). To that end,

---

[6] The Court also observes that Plaintiffs have asserted a Section 1983 claim for the alleged violation of the IDEA. (Doc. No. 4 ¶ 77.) Defendants do not specifically address the Section 1983 claim brought under this theory. However, the Court takes notice that Section 1983 is not an available remedy for violations of the IDEA because the IDEA has a sufficiently comprehensive remedial scheme. P.P. v. West Chester Area Sch. Dist., 585 F.3d 727, 734 (3d Cir. 2009); see also A.W. v. Jersey City Pub. Sch., 486 F.3d 791, 795 (3d Cir. 2007) (rejecting the Third Circuit's prior holding in W.B. v. Matula, 67 F.3d 484, 494 (3d Cir. 1995), and holding that Section 1983 is not available to remedy violations of the IDEA).

Defendants need not produce evidence to sustain the rationality of a statutory classification. Id. However, if Defendants do identify "a legitimate state interest that the legislature could rationally conclude was served by the statute," then Plaintiffs' claim must fail. Alexander v. Whitman, 114 F.3d 1392, 1403 (3d Cir. 1997). "Determining whether a particular legislative scheme is rationally related to a legitimate governmental interest is a question of law." Sammon v. N.J. Bd. of Med. Exam'rs, 66 F.3d 639, 645 (3d Cir. 1995).

Before considering the merits of the parties' cross motions it is important to emphasize the limited scope of the Court's review under the rational basis standard. In determining whether there is a rational basis for the funding scheme, this Court does not sit in judgment of the wisdom, equity, or effectiveness of the Commonwealth's decision. English v. Bd. of Educ., 301 F.3d 69, 82 (3d Cir. 2002) (noting that under rational basis review a law cannot be struck down just because "the law seems unwise or works to the disadvantage of a particular group, or if the rationale seems tenuous"). Nor may the Court strike down the funding scheme because the Court believes that Plaintiffs have presented a better alternative. Id. Further, the Court may not "second guess the legislature on the factual assumptions or policy considerations underlying the statute." Sammon, 66 F.3d at 645. "The sole permitted inquiry is whether the legislature rationally might have believed the predicted reaction would occur or that the desired end would be served." Id.

Defendants have identified four primary justifications for the current special education funding model.[7] First, Defendants argue the model is preferable to a "head count" system,

---

[7] In addition to the two reasons proffered in their brief in support of their own motion for summary judgment, Defendants articulate two additional reasons in their brief in opposition to Plaintiffs' motion. Because rational basis review permits the Court to consider any valid ground

9

because a head count system encourages districts to over-classify students as disabled. (Doc. No. 123 at 40-42.) Second, Defendants contend that the model provides a more stable and consistent level of funding than a head count model where yearly fluctuation in child count results in financial instability and unpredictability.[8] (Id. at 42-43.) Third, Defendants allege that the funding model encourages the school districts to contain costs. (Doc. No. 150 at 13-14.) Finally, Defendants claim that the funding model promotes transparency in the distribution of special education funds. (Id. at 15-16.)

Plaintiffs counter that there is no evidence that the previous system resulted in improper classification of students, and that even if there were, creating a system where districts receive less money per pupil for every additional student identified as special needs is not a rational means of addressing the issue. (Doc. No. 149 at 43-48.) Further, Plaintiffs argue that by tying funding to a statewide average of special needs populations, the system leaves those schools with above average special needs populations dependent on outside sources of funding, which are less stable than a state grant. (Id. at 48-51.)

The question then remains whether the Plaintiffs have sufficiently "negatived" all of Defendants' justifications to survive a motion for summary judgment. See Heller, 509 U.S. at

---

in upholding a state action, the Court will consider these grounds in weighing Defendants' motion for summary judgment. Malmed v. Thornburgh, 621 F.2d 565, 569 (3d Cir. 1980) (state action may be upheld on any valid ground, even one hypothetically posed by the court).

[8] Defendants' brief in support of their motion for summary judgment argues the funding formula gradually increases the share of funding provided to poor districts. (Doc. No. 123 at 42.-43.) Although Plaintiffs treat this argument as an independent justification for the funding scheme, (Doc. No. 149 at 42), the Court views this argument as an attempt by Defendants to bolster their second justification, and will treat it as such for purposes of these motions for summary judgment.

320.  The Court finds they have not.  Plaintiffs argue, in essence, that there is no evidence to support a finding that the justifications were considered by the legislature or that the reasons proffered are effective.  (See, e.g., Doc. No. 123 at 42-43.)  However, under rational basis review legislative choices need not be supported by evidence, rather they may be based on "rational speculation unsupported by evidence or empirical data."  Heller, 509 U.S. at 320.  The Commonwealth's funding formula will survive rational basis review provided the Court is able to conceive any rational basis for its enactment.  Malmed, 621 F.2d at 569.

The Commonwealth's expert contends that the Pennsylvania special education subsidy supports special education by transferring funds from the state treasury to local school districts in a way that is efficient, simple, transparent, predictable, sustainable, and stable.  (Doc. No. 124-2 at 19-20.)  These are undoubtedly legitimate goals, and the Court cannot find that the current funding scheme is not rationally related to these goals.  Providing a stable funding level that reliably increases each year regardless of year-to-year increases or decreases of the special needs population in the district promotes long-term planning both within the schools and with local taxing authorities as they determine their districts' annual needs.  The legislature also has a valid interest in ensuring that costs do not spiral in such a way as to impair the Commonwealth's ability to provide for special education – as well as other budget priorities.  Further, the formula's inclusion of an equalizing factor, namely the MVPI ratio, which ensures increased funds to poorer districts and the availability of a contingency fund for students with significant disabilities, contribute to a finding that the scheme does have a rational basis.  Notably, because the formula uses a district's previous funding level as the base funding amount, poorer districts will gradually receive proportionately greater shares of the new funds.

Therefore, whatever the merits of the plan in question, the Court holds that it does not violate Due Process. In arriving at this conclusion, the Court is guided by the Supreme Court, which counsels:

> The very complexity of the problems of financing and managing a statewide public school system suggests that "there will be more than one constitutionally permissible method of solving them," and that, within the limits of rationality, "the legislature's efforts to tackle the problems" should be entitled to respect. On even the most basic questions in this area the scholars and educational experts are divided. Indeed, one of the major sources of controversy concerns the extent to which there is a demonstrable correlation between educational expenditures and the quality of education . . . . The ultimate wisdom as to these and related problems of education is not likely to be divined for all time even by the scholars who now so earnestly debate the issues. In such circumstances, the judiciary is well advised to refrain from imposing on the States inflexible constitutional restraints that could circumscribe or handicap the continued research and experimentation so vital to finding even partial solutions to educational problems and to keeping abreast of ever-changing conditions.

San Antonio Indep. Sch. Dist., 411 U.S. at 42-43 (internal citations omitted). The Court further notes that the issue of how to best fund special education programs is exceedingly complicated. Special education funding mechanisms vary widely from state to state, and the Court has failed to find any two states with identical formulas – although Pennsylvania is not alone in utilizing a census-based approach. Given the diversity of legislative determinations regarding the best funding formula, the Court is particularly cognizant of its limited role in our constitutional system and is reluctant to calcify needed experimentation in this important public policy question with a constitutional ruling. As such, the Court must grant Defendants' motion for summary judgment on Plaintiffs' Due Process claim and deny Plaintiffs' motion on this issue.

D.   **IDEA Claim**

Defendants move for summary judgment on Plaintiffs' IDEA claim arguing that the claim must fail because the students are receiving a FAPE, the districts receive sufficient funds to provide a FAPE, and a change in the funding formula will not improve the quality of the students' education. (Doc. No. 123 at 37.) On the record currently before the Court, material questions of fact exist on each of these issues. On the issue of whether the students are receiving a FAPE, although Defendants have produced evidence that they are, Plaintiffs have produced evidence that they are not. (Doc. No. 149, Ex. C.) Similarly, a reasonable fact finder could deduce from the available evidence, including Platintiffs' expert report from Dr. Baker, that the funding scheme is responsible for the denial of a FAPE and that a change in the funding scheme will resolve these issues. (Doc. No. 70.) Because material questions of fact remain on Plaintiffs' IDEA claim, the Court must deny Defendants' motion for summary judgment.

### E. ADA and Rehabilitation Act Claims

Defendants move for summary judgment on Plaintiffs' ADA and Rehabilitation Act claims arguing that the claims must fail because there is no evidence that the Defendants discriminated against the students because of their disabilities. (Doc. No. 123 at 46.) In support, Defendants emphasize that a denial of FAPE does not per se constitute a violation of the Rehabilitation Act or the ADA. See, e.g., Andrew M. v. Delaware County, 490 F.3d 337, 350 (3d Cir. 2007). Although it is clear that a denial of FAPE is not automatically a violation of the ADA or the Rehabilitation Act, it does not follow that it cannot be. Indeed, the Third Circuit instructs that "violations of Part B of the IDEA are almost always violations of the [Rehabilitation Act]." Id.

To establish a violation of the Rehabilitation Act, a plaintiff need only establish: (1) he is

13

disabled; (2) he is otherwise qualified to participate in school activities; (3) the school or board receives federal financial assistance; and (4) he was excluded from participation in, denied the benefits of, or subject to discrimination at, the school. Id. In the case relied on by Defendants, the Third Circuit held that plaintiffs failed to establish a Rehabilitation Act claim because the children in question were underage and thus not otherwise qualified to participate in public school. Id. None of the children at issue in the present case, however, are not otherwise qualified to participate in public school. As such, the denial of FAPE may very well constitute a violation of the ADA or the Rehabilitation Act. Id. ("Therefore, when a state fails to provide a disabled child with a free and appropriate education, it violates the IDEA. That statute also violates the RA in that it denies a disabled child a guaranteed education merely because of the child's disability. It is the denial of an education that is guaranteed to all children that forms the basis of the claim."). Defendants' emphasis on the phrase "by reason of her or his disability" does nothing to eliminate all questions of material fact. Because Plaintiffs have introduced evidence that the funding scheme may deny the students an education as a result of their disability, summary judgment on the Rehabilitation Act and ADA claims must be denied.[9]

---

[9] In their briefs both parties focus their arguments almost exclusively on the Rehabilitation Act. However, because the ADA is an extension of the Rehabilitation Act's anti-discrimination principles to public entities, see generally Helen L. v. DiDario, 46 F.3d 325 (3d Cir. 1995), and because the elements of a violation are substantially the same, the Court's foregoing analysis applies with equal force to Plaintiffs' ADA claim. See also 42 U.S.C. § 12132 (1990) ("Subject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."); Charles Russo and Ralph Mawdsley, Education Law § 5.09 (14th ed. 2010) ("Generally, compliance with section 504 results in compliance with the ADA; however, several provisions of the ADA addressed loopholes in Section 504 and codified judicial interpretations of the Rehabilitation Act. In most of the lawsuits filed under both section 504 and the ADA the disposition for both laws is identical.").

F.  EEOA Claim

Defendants move for summary judgment on Plaintiffs' EEOA claim arguing that the claim must fail because "[t]here is no creditable evidence that the special education funding formula at issue prevented Plaintiffs from overcoming their language barriers." (Doc. No. 123 at 49.)  This Court previously held that to establish an EEOA violation, a plaintiff must show "(1) language barriers; (2) defendant's failure to take appropriate action to overcome these barriers; and (3) a resulting impediment to students' equal participation in instructional programs." (Doc. No. 31 at 17 (citing Leslie v. Bd. of Educ., 379 F. Supp. 2d 952, 960 (N.D. Ill. 2005)).)  In the case at bar, the second certified class is comprised of LEP special needs students at schools having a 10 percent or greater population of LEP students.  (Doc. No. 133.)  Further, there is evidence in the record from which a fact finder could conclude that the LEP special needs students are unable to participate fully in their special education programs.  (Doc. No. 127 at 46-50.)  There is also evidence from which a fact finder could conclude that the lack of dedicated funding for special needs LEP students is to blame.  (Doc. No. 149 at 57.)  Therefore, the Court will deny Defendants' motion for summary judgment on this claim.

Likewise, Plaintiffs' motion for summary judgment on their EEOA claim cannot be granted.  In the present action, although there are obvious language barriers, the Court cannot conclude that there is no dispute as to whether Defendants have failed to take appropriate action or whether the students have been impeded from participation in their instructional programs. (See Doc. No. 31 at 17 (citing Leslie, 379 F. Supp. 2d 960).)  Because Defendants have provided evidence that the students have not been impeded from participating in their instructional programs and because Plaintiffs have not clearly established that the fault lies with the special

education funding scheme, the Court will deny Plaintiffs' motion as to this claim. (Doc. No. 150 at 27-29.)

IV. CONCLUSION

The issues presented to the Court are highly fact intensive. Moreover, whereas determinations regarding whether a FAPE has been denied are generally made in the first instance at the administrative level, here the Court waived the administrative exhaustion requirements and must proceed without the benefit of a well-developed record from a hearing. As such, decisions on most issues will be deferred until the fact finder has an opportunity to weigh the evidence, including testimony from a number of expert witnesses. However, because as a matter of law Plaintiffs' Rehabilitation Act and ADA claims against an individual cannot proceed, summary judgment will be granted on those issues. In addition, Plaintiffs' Due Process claim must fail because the Court has discerned a rational basis for the enactment of Pennsylvania's special education funding formula and because the Eleventh Amendment bars such suits against the Department of Education. An order consistent with this memorandum will follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CG, et al., | : |
|     Plaintiffs | : Civil Action No. 1:06-CV-1523 |
| | : |
| v. | : (Chief Judge Kane) |
| | : |
| THE COMMONWEALTH OF PENNSYLVANIA DEPARTMENT OF EDUCATION and GERALD ZAHORCHAK, | : |
|     Defendants | : |

## ORDER

**ACCORDINGLY**, on this 28th day of January 2011, upon consideration of Defendants' motion for summary judgment (Doc. No. 110) and Plaintiffs' motion for partial summary judgment (Doc. No. 109), **IT IS HEREBY ORDERED THAT**:

1. Plaintiffs' motion for partial summary judgment is **DENIED**;

2. Defendants' motion for summary judgment is granted as to the following claims:

   a. Plaintiffs' Rehabilitation Act and ADA claims against Defendant Zahorchak; and

   b. Plaintiffs' Substantive Due Process claim against both Defendant Department of Education and Defendant Zahorchak.

3. Defendants' motion for summary judgment is **DENIED** in all other respects.

                                              S/ *Yvette Kane*
                                              Yvette Kane, Chief Judge
                                              United States District Court
                                              Middle District of Pennsylvania