**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| C.G., et al., | : | |
|     **Plaintiffs** | : | **Civil Action No. 1:06-cv-1523** |
| | : | |
| v. | : | **(Chief Judge Kane)** |
| | : | |
| THE COMMONWEALTH OF | : | |
| PENNSYLVANIA DEPARTMENT OF | : | |
| EDUCATION, and SECRETARY | : | |
| GERALD ZAHORCHAK, | : | |
|     **Defendants** | : | |

## MEMORANDUM

Before the Court is Plaintiffs' motion to exclude the testimony of Dr. Jay Gottlieb

pursuant to Federal Rule of Civil Procedure 26(a)(2)(B) and Daubert v. Merrell Dow Pharm.,

Inc., 509 U.S. 579, 589 (1993).  The Court ordered briefing on the matter, and on March 30,

2011, the Court heard the testimony of Dr. Gottlieb and the arguments of counsel.  On July 18,

2011, Defendants filed a supplemental report prepared by Dr. Gottlieb.  (Doc. No. 221.)

Plaintiffs filed a motion exclude this supplemental report on July 29, 2011.  (Doc. No. 225.)  For

the reasons stated more fully herein, the Court will grant Plaintiffs' motion to exclude the report.

## I.     STANDARD OF REVIEW

The Federal Rules of Evidence embrace a policy of admitting evidence that might assist

the trier of fact.  Fed. R. Evid. 401.  Accordingly, "Rule 702, which governs the admissibility of

expert testimony, has a liberal policy of admissibility."  Pineda v. Ford Motor Co., 520 F.3d 237,

243 (3d Cir. 2008) (quoting Kannankeril v. Terminix Int'l, Inc., 128 F.3d 802, 806 (3d Cir.

1997)).  However, while expert testimony will generally be admissible,[1] in determining whether to admit expert testimony at trial, the Federal Rules of Evidence charge the Court with acting as a gatekeeper "to ensure that any and all expert testimony or evidence is not only relevant, but also reliable."  Kannankeril, 128 F.3d at 806 (citing Daubert, 509 U.S. at 589).  The party offering an expert must establish by a preponderance of the evidence that the testimony and witness satisfy the requirements of Federal Rule of Evidence 702.  See Daubert, 509 U.S. at 592-93 (citing Fed. R. Evid. 104(a)).  Rule 702, which governs the admissibility of expert testimony, provides that:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.  "Rule 702 embodies a trilogy of restrictions on expert testimony: qualification, reliability[,] and fit."  Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 404 (3d Cir. 2003) (citing In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-43 (3d Cir.1994)).

## II.    DISCUSSION

At the Daubert hearing Plaintiffs primarily challenged Dr. Gottlieb's report on the basis of qualification and reliability.  The Court will consider first Dr. Gottlieb's qualifications as an expert and second will consider the reliability of his report.

---

[1] Exclusion of expert testimony is the exception rather than the rule because "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Fed. R. Evid. 702 (advisory committee notes) (citing Daubert, 509 U.S. at 595).

A.      **Qualification of Dr. Gottlieb**

When considering the expertise of a witness, a court must "eschew[] imposing overly

rigorous requirements of expertise" and instead consider "a broad range of knowledge, skills,

and training" that may qualify a witness as an expert.  Lauria v. AMTRAK, 145 F.3d 593, 598

(3d Cir. 1998) (citing Paoli, 35 F.3d at 741).  As one district court has explained, this process

involves a two step inquiry:

> First, the Court must determine whether the proffered expert has
> minimal qualifications, either through experience or education, in a
> field that is relevant to a subject which will assist the trier of fact.
> Second, the Court must compare the expert's area of expertise with
> the particular opinion the expert seeks to offer to ensure that the
> opinion to be rendered will be helpful to the jury.

Poust v. Huntleigh Healthcare, 998 F. Supp. 478, 491 (D.N.J. 1998) (citing Federal Judicial

Center, Reference Manual on Scientific Evidence 55 (1994)).

There is no dispute that Dr. Gottlieb is an expert in the field of special education.  His

experience, education, and publications on this subject speak for themselves.  (See Doc.124-3.)

However, Dr. Gottlieb is offered as an expert qualified to comment on Dr. Baker's expert report.

(Hearing Tr. at 20:23-25.)  Dr. Baker was offered, without objection, as an expert in school

finance policy, research, and analysis, and his report addresses these subjects.  (Hearing Tr. at

90:8-20.)  On this subject, Dr. Gottlieb's qualifications are less clear.  Although Dr. Gottlieb has

not engaged in research on the effect of funding levels on special education outcomes (Hearing

Tr. at 21:16-18), Defendants note that Dr. Gottlieb did serve on the Mamaroneck School Board

for six years and worked on education budgets (Hearing Tr. at 8:12-14).  The Court is, however,

unconvinced that Dr. Gottlieb's experience as a member of a local school board qualifies him as

an expert to comment on Dr. Baker's report, which evaluates systemic effects of the statewide

census based funding model.

### B.    Reliability of Dr. Gottlieb's Findings

Even if Dr. Gottlieb were qualified as an expert on the issue of school funding, his report does not satisfy <u>Daubert</u>'s reliability requirement.  The issue of "reliability" is focused on methodology.  A court must satisfy itself that the challenged expert's opinions are based on "'methods and procedures of science' rather than on subjective belief or unsupported speculation; the expert must have 'good grounds' for his or her belief." <u>Paoli</u>, 35 F.3d at 742 (citing <u>Daubert</u>, 509 U.S. at 589-90).  Dr. Gottlieb's methodology does not satisfy this standard.

Rather than generalize from a random probability sample or representative sample, Dr. Gottlieb selected and compared eight school districts.  He first selected four of the poorest performing class districts on the basis that Dr. Baker had identified those districts in his report. (Hearing Tr. at 44:2-13.)  He then requested an employee of the Pennsylvania Department of Education to select a corresponding "upscale" district contiguous to the class districts he selected and used these districts as a point of comparison.  (Hearing Tr. at 66:14-22.)  As Dr. Gottlieb explained, he selected these admittedly nonrepresentative school districts because in his mind they represented the "extremes" of the funding level and were thus most likely to support Dr. Baker's conclusion.  (Hearing Tr. at 38:9-21.)  He reasoned that if the extremes failed to support Dr. Baker's conclusion, then those districts in which the funding gap was less pronounced would also not support Dr. Baker's conclusion.  (Hearing Tr. at 38:9-21.)

Dr. Gottlieb gave no indication that this methodology was an accepted practice, other than to say that usually one could not generalize using only outliers, however in this case he could, and in any event he was not submitting this study for publication.  (Hearing Tr. at 48:14-

4

21.)  Defendants have offered no basis from which the Court might conclude that making generalizations about a statewide funding formula based on comparisons of only eight out of five hundred school districts, especially where those eight districts are purposefully nonrepresentative and clustered in one region of the Commonwealth,[2] constitutes an acceptable research methodology.  Accordingly, the Court is left with no choice but to conclude that Dr. Gottlieb's methodology does not satisfy the standards for reliability.

Even if this Court were to conclude, arguendo, that Dr. Gottlieb employed an accepted method of sampling, the Court cannot ignore Dr. Gottlieb's deeply flawed application of his method.  First, there is no evidence to suggest that the districts selected by Dr. Gottlieb do in fact represent extremes.  Dr. Gottlieb could only testify that the four selected class districts had "substantial" funding shortfalls.  (Hearing Tr. at 44:2-13.)  Of equal concern, Dr. Gottlieb failed to adequately address how the four districts selected for comparison purposes were chosen.  Dr. Gottlieb testified that he asked the Department of Education to select a corresponding "upscale" district in the same county as each selected class district.  (Hearing Tr. at 27:5-22.)  He did not give any parameters for how the Department should select the district or what the district should look like.  (Hearing Tr. at 52:1-12.)  The Department of Education employee who actually selected the districts for Dr. Gottlieb testified that she "believed" the districts she selected had the lowest market value personal income ratio of any district contiguous to the selected class district.[3]  (Hearing Tr. at 127:11-15.)  The Court is skeptical, however, that two contiguous

---

[2] The selected class districts are all located in the Southeast corner of the Commonwealth.

[3] The MVPI ratio represents the combined market value and income wealth for each pupil in a district.  (Doc. No. 111 ¶ 11.)  A low MVPI ratio would indicate that a district was affluent.

districts are likely to represent the polar extremes of school funding shortfalls.  Moreover, Dr.

Gottlieb does not provide the Court with any information that would support his position that

these districts are indeed on the extreme ends of the funding spectrum.

  In addition to raising questions regarding whether Dr. Gottlieb did in fact succeed in

testing the "extremes" of the funding spectrum, the report lacks the precision necessary for

reliability.  Dr. Gottliebexplained that he selected for comparison only districts from the same

county as the corresponding class district because he "assumed" the districts in the same county

used the same training.  (Hearing Tr. at 52:13-25.)  He admittedly did not know whether this

assumption was correct.  (Hearing Tr. at 53:2-4.)  He claimed that he selected the four class

districts based on one sentence in Dr. Baker's report, which highlighted six districts, and did not

explain why he only selected four of those six except to say that he was pressed for time and four

is easier to read than six.  (Hearing Tr. at 24:7-11; 26:11-24.)  He gave no instruction regarding

the selection of the non-class districts.  (Hearing Tr. at 66:14-22.)  He did not define terms such

as "urban" and "non-urban" in his report, and conceded during the hearing that his use of those

terms was "loose."  (Hearing Tr. at 51:9-12.)  As Dr. Baker explained, Table 7, in which Dr.

Gottlieb attempts to demonstrate the number of related services provided to special education

students in the selected districts, suffers from extremely small sample sizes,[4] lack of information

regarding whence the data is derived, lack of information regarding how the services described

---

  [4] In each district fifteen IEPs were selected.  (Doc. No. 124-3 at 16.)  Total special
education enrollment in the four selected class districts was 1,524 in York City, 2,227 in
Lancaster, 2,210 in Reading, and 2,562 in Allentown.  (Id. at 3.)  As such, in the selected class
districts Dr. Gottlieb only analyzed between 0.5 percent and 0.9 percent of IEPs.

in the table are distributed, failure to select representative cases,[5] no basis for determining the relative costs of these services, and failure to define what the services are.  (Doc. No. 124-3 at 15.)  Dr. Gottlieb explains these deficiencies by pointing out that his study was not intended for publication.  (Hearing Tr. at 48:16-17; 56:25.)  However, while the Daubert standard does not mandate peer-reviewed expert reports an every instance, it does mandate indicia of reliability not apparent here.

## III.    CONCLUSION

Although Dr. Gottlieb undoubtedly possesses great expertise in evaluating individual educational outcomes, the Court cannot qualify him as an expert in the field of school funding competent to offer an expert opinion on Dr. Baker's report.  Even if Dr. Gottlieb's expertise encompassed school financing, his methodology falls far short of the reliability required by Daubert.  Because the Court grants Plaintiffs' motion to exclude Dr. Gottlieb's expert report, the Court will also exclude the supplemental report on the same basis.

---

[5] Dr. Gottlieb explained he instructed the districts to select every X student alphabetically to arrive at 15 students.  (Hearing Tr. at 37:12-19.)  For example, in York City the district would have selected every hundredth student's file.  Although this sample is random, the size of the sample is too small to be statistically significant, and there certainly is no basis for concluding that the sample is "representative" as Dr. Gottlieb suggests in his report.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **C.G., <u>et</u> <u>al.</u>,** | : | |
| **Plaintiffs** | : | **Civil Action No. 1:06-cv-1523** |
| | : | |
| **v.** | : | **(Chief Judge Kane)** |
| | : | |
| **THE COMMONWEALTH OF** | : | |
| **PENNSYLVANIA DEPARTMENT OF** | : | |
| **EDUCATION, and SECRETARY** | : | |
| **GERALD ZAHORCHAK,** | : | |
| **Defendants** | : | |

## <u>ORDER</u>

**NOW**, on this 16ᵗʰ day of August 2011, **IT IS HEREBY ORDERED THAT** Plaintiffs'

motions to exclude Dr. Gottlieb's testimony (Doc. Nos. 194, 225) are **GRANTED**.


 S/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania

8